UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:16-CR-109 |
| | ) | |
| DEMETRIUS HODGES | ) | |

## MEMORANDUM AND ORDER

This criminal case is before the Court on the defendant's renewed *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i), along with a *pro se* motion to amend. [Docs. 295, 299].[1] The United States has responded in opposition [docs. 297, 306] and the defendant has not replied within the time allowed by this Court's Local Rules. For the reasons that follow, the motion to amend will be granted but the motion for compassionate release will be denied.[2]

## I.    BACKGROUND

In September 2017, the Honorable Pamela L. Reeves sentenced the defendant to a 100-month term of imprisonment for conspiring to distribute methamphetamine. The defendant is presently incarcerated at FPC Montgomery with a projected release date of February 3, 2024. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Dec. 8, 2021). He now moves for compassionate release in light of the COVID-19 pandemic, hypertension, obesity, prior gunshot wounds which purportedly impair his

---

[1] A prior compassionate release motion [doc. 264] was denied with leave to renew by the Honorable Thomas A. Varlan for failure to exhaust administrative remedies. [Doc. 294].

[2] In his motion to amend, the defendant notes that he has been diagnosed as carrying the sickle cell trait.

ability to breathe, "respiratory distress in trachea dysfunction and a replacement trachea," his alleged immune-compromised status due to the gunshot wounds and a prior blood transfusion, and the presence of the trait for sickle cell anemia.

## II.  COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons."  That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i).  Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant.   *See* 18 U.S.C. § 3582(c)(1)(A) (2017).  The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf.  *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and

2

the accompanying application notes. District courts in this circuit previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[3] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

### A. Exhaustion

The defendant asked his warden to file for compassionate release on August 12, 2021 [doc. 295] and the instant compassionate release motion was filed on August 23, 2021, meaning the defendant did not wait the requisite 30 days after the warden's receipt of his request. The United States, however, has expressly waived enforcement of the exhaustion requirement in this case. [Doc. 297, p. 1, 4]. The Court thus finds that it has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 834.

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, hypertension, obesity, prior gunshot wounds which purportedly impair his ability to breathe, "respiratory distress in trachea dysfunction and a replacement trachea," his alleged immune-compromised status, and the presence of the trait for sickle cell anemia.

---

[3] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

At the defendant's prison camp, there are currently one staff and zero inmates positive for COVID-19, with 44 inmates and 16 staff having recovered, and no inmate or staff deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 8, 2021). These numbers are historically significant, but the Court simultaneously notes that outside the prison setting our nation remains in crisis in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Additionally, at the defendant's camp 85 staff and 400 inmates have now been fully vaccinated. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 8, 2021). The defendant is one of those 400 inmates, and he has also recovered from a previous COVID-19 infection. [Doc. 292].

BOP medical records confirm that the defendant has been diagnosed with obesity, hypertension, injury of the left jaw area secondary to a gunshot wound, and "Sickle Cell Trait/Disease." [Docs. 292, 299]. The record before the Court does not, however, confirm the issues of respiratory distress or immuno-compromised status as alleged by the

4

defendant. [*Id.*].

The BOP categorizes the defendant as a Care Level 1 inmate. [Doc. 291, Ex. 1]. "Care Level 1 inmates are less than 70 years of age and are generally healthy. They may have limited medical needs that can be easily managed by clinician evaluations every 6 to 12 months." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Dec. 8, 2021).

At a May 2021 appointment, the defendant "appeared well," and no apparent distress was noted. [Doc. 292]. At a December 2020 appointment, there was no shortness of breath, difficulty breathing, or history of immunocompromised status. [*Id.*]. Notes from a September 2020 appointment stated that, other than hemorrhoids, the defendant "has no other chronic ongoing medical problems," that he is not immunocompromised, "has no serious heart condition," and does not have "sickle cell *disease*." [*Id.*] (emphasis added).[4]

Obesity, and "possibly" hypertension, "can" increase the risk of severe illness from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 8, 2021). However, as noted, the defendant is now fully vaccinated against COVID-19 and has recovered from a prior infection. The Sixth Circuit Court of Appeals has recently held that, "even recognizing the purported seriousness of his

---

[4] Thus, the available record confirms only that the defendant has the sickle cell *trait* rather than sickle cell *disease*. [Docs. 292, 299]. Persons with only the sickle cell trait "usually do not have any of the signs of the disease and live a normal life, but they can pass the trait on to their children. Additionally, there are a few, uncommon health problems that may potentially be related to sickle cell trait." *See* What Is Sickle Cell Disease?, https://www.cdc.gov/ncbddd/sicklecell/facts.html (last visited Dec. 8, 2021). The favorable case cited by the defendant, *United States v. Thompson*, Case No. 92-30065-001, 2020 WL 3470300 (C.D. Ill. Jun. 25, 2020), does not appear to have fully distinguished the sickle cell *trait* from the sickle cell *disease*, *id.* at 3, and is not persuasive as applied to the facts of this case.

5

condition," a defendant's

> access to the COVID-19 vaccine substantially undermines his request for a
> sentence reduction. To that end, we agree with the Seventh Circuit that a
> defendant's incarceration during the COVID-19 pandemic—when the
> defendant has access to the COVID-19 vaccine—does not present an
> "extraordinary and compelling reason" warranting a sentence reduction. *United
> States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (Easterbrook, J.). After
> all, with access to the vaccine, an inmate largely faces the same risk from
> COVID-19 as those who are not incarcerated. To be sure, inmates in some
> respects face social distancing challenges distinct from those of the general
> public (although perhaps not entirely unlike students in dorm rooms,
> individuals in medical and assisted care facilities, and even residents of densely
> occupied apartment complexes). But to the extent prisons do offer some unique
> challenges, the vaccine now significantly reduces the risks associated with
> COVID-19. And at this intersection of law and science, we find wisdom in
> Judge Easterbrook's assessment that "for people living in close quarters,
> vaccines offer relief far more effective than a judicial order." *Id.*

*See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021).

Even more recently, the Sixth Circuit issued its published ruling in *United States v. Traylor*, 16 F.4th 485 (6th Cir. 2021). In *Traylor*, the appellant sought compassionate release "due to her various health ailments (e.g., diabetes, sleep apnea, asthma, obesity, being a recent organ transplant recipient, and use of immunosuppressive therapy)." *Id.* The Sixth Circuit "[a]ccept[ed] the serious nature of Traylor's alleged medical conditions" but nonetheless held that her argument was foreclosed by *Lemons*' "holding that 'a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction.'" *Id.* (citing and quoting *Lemons*).

The published holdings in *Lemons* and *Traylor* bind this Court. *See, e.g., Grundy Mining Co. v. Flynn*, 353 F.3d 467, 479 (6th Cir. 2003). As such, the defendant has not carried his burden of showing extraordinary and compelling grounds for compassionate

6

release. For that reason alone, his motion must be denied. *See Elias*, 984 F.3d at 519.

Compassionate release in this case would also be inconsistent with the 18 U.S.C. § 3553(a) factors. Pursuant to that statute,

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>>
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28; and
>>>
>>> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
> . . .

7

(5) any pertinent policy statement—

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Under the terms of his plea agreement in this case, the defendant agreed to be held responsible for distributing at least 150, but less than 500, grams of methamphetamine over a one-year period. [Presentence Investigation Report ("PSR"), doc. 166, ¶¶ 5, 15, 20]. He supplied methamphetamine for resale. [*Id.*, ¶¶ 16-18]. The crime was serious and caused immeasurable harm.

The defendant's criminal history is a concern. There are convictions for simple battery, aggravated assault, fleeing from law enforcement, possession of a firearm by a previously convicted felon, and numerous controlled substance offenses. [*Id.*, ¶¶ 39-41, 44-48]. There have been multiple violations and revocations of probation. [*Id.*, ¶¶ 40, 44-46, 48]. The defendant was on probation when he committed the instant offense. [*Id.*, ¶ 50].

The defendant cites his post-sentencing rehabilitative efforts. The Court appreciates the coursework that the defendant has completed [doc. 299] and takes note that he is

8

presently housed at a minimum-security camp. *See* Bureau of Prisons, https://www.bop.gov/locations/institutions/mon/ (last visited Dec. 8, 2021). The record also contains no documentation of any disciplinary infractions during the current term of imprisonment.[5]

The Court appreciates the defendant's post-sentencing conduct but finds that issue to be outweighed by his record of convictions and probation revocations. The criminal history is substantial and the probationary record is poor. The defendant's gunshot wounds predate the instant conspiracy [doc. 166, ¶ 58] and were insufficient to keep him from engaging in extensive criminal conduct. The Court is mindful that less than 26 months of actual time currently remain on the defendant's sentence. Even so, compassionate release on the facts of this case would not reflect the seriousness of the offense of conviction and the defendant's broader criminal history, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant.

### III.   CONCLUSION

As provided herein, the defendant's motion to amend [doc. 299] is **GRANTED** but his renewed compassionate release [doc. 295] is **DENIED**.

> **IT IS SO ORDERED.**

ENTER:

_____
s/ Leon Jordan
United States District Judge

---

[5] The United States cites documentation that the defendant failed or withdrew from the BOP's beneficial Residential Drug Abuse Program ("RDAP") [doc. 291, Ex. 1], but the record also shows that he tested positive for COVID-19 in December 2020 (and thus had to go into quarantine) while he was enrolled in that immersive course. [Doc. 292]. The limited record before the Court is thus less than clear as to *why* the defendant is noted to have failed or withdrawn from RDAP, so the issue has not been considered herein.